**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 44113**

| | | |
|---|---|---|
| JON THOMPSON, | ) | 2016 Opinion No. 64 |
| | ) | |
| Petitioner-Respondent, | ) | Filed: October 17, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KEL-LEE BYBEE, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Laurie A. Fortier, Magistrate.

District court decision, on intermediate appeal, affirming magistrate's judgment of contempt, <u>reversed</u>.

Alan Trimming, Ada County Public Defender; John R. Shackelford, Deputy Public Defender, Boise, for appellant.

MSBT Law, Chtd.; Anthony M. Pantera, Boise, for respondent.

---

GRATTON, Judge

Kel-Lee Bybee appeals from the district court's decision, on intermediate appeal, affirming the magistrate's judgment of contempt. We reverse.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Bybee and Jon Thompson never married but are the parents of a daughter (A.T.). The couple separated and agreed to a custody order regarding A.T. When A.T. was sixteen, Bybee and Thompson stipulated to an order modifying their custody rights. The order stated: "It is in the best interests of [A.T.] . . . that the parties share joint legal custody of [A.T.], and that primary physical and residential care of [A.T.] remain with [Thompson]."

When A.T. was seventeen, Bybee consented, pursuant to Idaho Code § 32-202, to A.T.'s marriage. Thompson did not learn of the marriage until five days after it occurred. Thompson

moved to hold Bybee in contempt for violating the order modifying custody. Bybee moved to dismiss the contempt allegation several times. The magistrate denied Bybee's motions and held her in contempt after a trial. On intermediate appeal, the district court affirmed the magistrate's judgment of contempt. Bybee timely appeals.

## II.

## ANALYSIS

Bybee asserts the district court erred in affirming the magistrate's judgment of contempt. Thompson seeks attorney fees.

### A.        Contempt

Bybee asserts the district court erred in affirming the magistrate's judgment of contempt. For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

Bybee asserts the order modifying custody did not clearly and unequivocally enjoin her from consenting to A.T.'s marriage because it did not command her to refrain from consenting to the marriage. Idaho Code § 7-601(5) defines contempt as "[d]isobedience of any lawful judgment, order or process of the court." To find a person in criminal contempt, a judge must find that all of the elements of contempt have been proved beyond a reasonable doubt, including that the person willfully committed the contempt. *State v. Rice*, 145 Idaho 554, 556, 181 P.3d 480, 482 (2008). To find that a person willfully disobeyed a court order, the order must be clear and unequivocal. *Id.* To be clear and unequivocal, a court order must command a person to do or refrain from doing something. *Carr v. Pridgen*, 157 Idaho 238, 243, 335 P.3d 578, 583 (2014); *see also Bald, Fat & Ugly, LLC v. Keane*, 154 Idaho 807, 810, 303 P.3d 166, 169 (2013); *Albrethson v. Ensign*, 32 Idaho 687, 688, 186 P. 911, 912 (1920). If an order does not command

2

a person to do or refrain from doing something, disobedience of the order is impossible. *Keane*, 154 Idaho at 810, 303 P.3d at 169; *Albrethson*, 32 Idaho at 688, 186 P. at 912.

For instance, in *Keane*, the order stated the plaintiff could recover a certain amount from the defendants but did not require the defendants to pay money to anyone. *Keane*, 154 Idaho at 809, 303 P.3d at 168. The defendants failed to pay the amount specified in the order, and the district court held them in contempt for disobeying the order. *Id.* at 808, 303 P.3d at 167. The Supreme Court reversed the district court's judgment of contempt because the order did not require the defendants to do or refrain from doing anything and disobedience of the order was therefore impossible. *Id.* at 810, 303 P.3d at 169.

Similarly, in *Albrethson*, the order adjudicated the water rights of various appropriators but did not command any appropriators to refrain from diverting more water than permitted by the order. *Albrethson*, 32 Idaho at 687, 186 P. at 911. The district court held one appropriator in contempt for diverting more water than permitted by the order. *Id.* The Supreme Court reversed the district court's judgment of contempt, stating that because the order "did not command [the appropriator], or anyone else, to do or to refrain from doing, anything, disobedience of it [was] impossible." *Id.* at 688, 186 P. at 912.

Finally, in *Carr*, the order contained a parenting plan that specified both parents would make major decisions about their son's education. *Carr*, 157 Idaho at 242, 335 P.3d at 582. The mother enrolled the son in the school nearest to her home, and the district court held her in contempt for disobeying the order. *Id.* at 241, 335 P.3d at 581. The Supreme Court found the only command in the order regarding the son's education was ineffective because it "purported to require the parties to reach an agreement" and was "silent as to the parties' duties in the event of a failure to reach agreement." *Id.* at 243, 335 P.3d at 583. Because the order did not otherwise command the parents to do or refrain from doing anything, the Court reversed the district court's decision affirming the magistrate's judgment of contempt. *Id.* at 244, 335 P.3d at 584.

In this case, the order modifying custody states: "It is in the best interests of [A.T.] . . . that the parties share joint legal custody of [A.T.], and that primary physical and residential care of [A.T.] remain with [Thompson]." Bybee asserts the order does not command the parties to do or refrain from doing anything and is, therefore, impossible to disobey.

Thompson asserts the order includes the language in I.C. § 32-717B(3) defining joint legal custody. Idaho Code § 32-717B(3) defines joint legal custody as "a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children." Because a child's marriage relates to the child's general welfare, Thompson asserts the order commands Bybee to share decision-making rights with Thompson relating to A.T.'s marriage.

In response, Bybee asserts that even if the order includes the language in I.C. § 32-717B(3), that language is inconsistent with her statutorily granted right to consent to A.T.'s marriage under I.C. § 32-202 without Thompson's agreement. Idaho Code § 32-202 allows "the father, mother or guardian" of a minor to consent to the minor's marriage. Further, Bybee argues that the requirement to "share" decision-making rights, does not clearly mandate that one parent cannot make a decision regarding the minor without the other parent's involvement.

We are not convinced the order here clearly and unequivocally prohibited Bybee from consenting to A.T.'s marriage. Similar to the orders in *Keane*, *Albrethson*, and *Carr*, the order here does not, on its face, command Bybee to do or refrain from doing anything. Rather, the order grants Bybee the legal right to "share joint legal custody" of A.T. Because the order does not command Bybee to do or refrain from doing anything, it is impossible to disobey.

Even considering the definition of joint legal custody provided in I.C. § 32-717B(3), the order is still unclear. When considered with I.C. § 32-717B(3)'s definition of joint legal custody, as interpreted by Thompson, the order appears to "require the parties to reach an agreement" and is "silent as to the parties' duties in the event of a failure to reach agreement." *Carr*, 157 Idaho at 243, 335 P.3d at 583. As the Court found in *Carr*, such an order is ineffective because "one party does not have the power to create an agreement without the assent of the other party." *Id.* Moreover, when considered with the definition of joint legal custody provided by I.C. § 32-717B(3), the order is inconsistent with Bybee's statutorily granted right to consent to A.T.'s marriage under I.C. § 32-202.[1] Idaho Code § 32-202 allows "the father, mother or guardian" of a

---

[1] The order grants legal rights similar to those granted by marriage in Idaho: parents are to share decision-making rights, responsibilities, and authority. However, whether within a marriage or without, one parent's decision-making rights do not prevent the other parent from unilaterally making legal decisions regarding a child's general welfare. In other words, had Bybee and Thompson been married and A.T. living with them, they would have shared decision-making rights, but Idaho Code § 32-202 grants to either parent the right to consent to the

4

minor to consent to the minor's marriage. Thus, as A.T.'s mother, Bybee could consent to A.T.'s marriage under I.C. § 32-202 regardless of Bybee's legal custody rights. So even importing the statutory definition of legal custody into the order, it does not clearly and unequivocally prohibit Bybee from exercising her statutorily granted right to consent to A.T.'s marriage. Accordingly, the district court erred in affirming the magistrate's judgment of contempt.

**B.    Attorney Fees**

Thompson seeks attorney fees pursuant to I.C. § 12-121. Idaho Code § 12-121 permits "the discretionary award of attorney fees 'to the prevailing party'" on appeal from a contempt proceeding. *State Dep't of Health & Welfare v. Slane*, 155 Idaho 274, 279, 311 P.3d 286, 291 (2013). Thompson is not entitled to attorney fees because he did not prevail in this appeal.

### III.

### CONCLUSION

The magistrate's order modifying custody did not clearly and unequivocally enjoin Bybee from consenting to A.T.'s marriage. The district court's decision, on intermediate appeal, affirming the magistrate's judgment of contempt is reversed. Costs on appeal are awarded to Bybee as the prevailing party.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

---

marriage. Joint decision-making rights under court order are no more restrictive without express delineation.